**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| AZIE, ET AL., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. PX-25-1969 |
| | * | |
| BHATRA, | * | |
| | * | |
| Defendant. | * | |
| | * | |

*******

**REPORT AND RECOMMENDATIONS**

This "Report and Recommendations" addresses the "Plaintiffs' Motion for Entry of Default Judgment as to Defendant Abhita Batra," and memorandum in support thereto ("the Motion"), (ECF Nos. 25, 25-2), filed by Plaintiffs Obiora Azie ("Plaintiff Azie"), Mohammadreza Tahriri ("Plaintiff Tahiri"), and Lok Sum Wong ("Plaintiff Wong") (collectively "Plaintiffs"). (ECF No. 25). In the Motion, Plaintiffs seek entry of default judgment against Defendant Abhita Batra ("Ms. Batra" or "Defendant Batra"). (*Id.*). No response has been filed to the Motion, and the time for responding has passed. *See* Local Rule 105.2 (D. Md. 2023). I have considered that fact, and the fact that the Defendant has not taken any action to defend against this lawsuit.

On July 9, 2026, the Honorable Paula Xinis referred this matter to me pursuant to 28 U.S.C. § 636 and Local Rule 301 (D. Md. 2025), to author a report and to make recommendations. (ECF No. 26). I do not believe that a hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, I ultimately recommend that the Motion, (ECF No. 25), be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background[1]

#### 1. *The Parties*

According to the First Amended Complaint, Defendant Batra is the CEO and director of a company called Otomagnetics, Inc. ("Otomagnetics" or "the Company"), a Maryland biomedical research corporation. (ECF No. 8, "Amended Complaint," ¶¶ 4, 6). Ms. Batra was significantly involved in the routine business operations of Otomagnetics and exercised control over its daily operations. (Amended Complaint, ¶ 6).

In or about August 2021, Defendant Batra hired Plaintiff Azie to work as a scientist at Otomagnetics (Amended Complaint, ¶¶ 1, 7). His salary during his period of employment was $100,000 per year ($8,333.33 per month). (Amended Complaint, ¶17). Plaintiff Azie worked at Otomagnetics until June 23, 2025, when he resigned. (Amended Complaint, ¶¶ 1, 11).

In or about October 2021, Defendant Batra hired Plaintiff Tahriri to work as a scientist at Otomagnetics (Amended Complaint, ¶¶ 2, 7). His salary during his period of employment was $110,000 per year ($9,166.67 per month). (Amended Complaint, ¶18). Plaintiff Azie worked at Otomagnetics until June 23, 2025, when he resigned. (Amended Complaint, ¶¶ 2, 12).

In or about March 2022 , Defendant Batra hired Plaintiff Wong to work as a scientist at Otomagnetics (Amended Complaint, ¶¶ 3, 7). Her salary during her period of employment was $120,000 per year ($10,000 per month). (Amended Complaint, ¶19). Plaintiff Azie worked at Otomagnetics until February 28, 2025. (Amended Complaint, ¶¶ 3, 13).

In addition to hiring Plaintiffs, Defendant Batra supervised them, and had the authority to

[1] Because this case is before the district court on a motion for entry of default judgment, the undersigned accepts as true all well-pled allegations, except those related to damages. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001); *see also* Fed. R. Civ. P. 8(b)(6).

fire them. (Amended Complaint, ¶6). Ms. Batra also set Plaintiffs' work schedule, maintained their employment records, and created and enforced "Otomagnetics' policies and procedures governing employee pay and work hours." (*Id.*). Furthermore, Ms. Batra established and approved of Plaintiffs' rates and manner of payment, and she approved of the decision not to pay Plaintiffs any compensation, as well as approved of the decision to pay them late, for the time periods alleged. (*Id.*). Moreover, Defendant Batra "controlled the corporate funds which were used to pay Plaintiffs and other employees," and she "allocate[d] finds as profits for her benefit, in order to make Otomagnetics more profitable." (*Id.*).

2. *Wages*

When Plaintiffs began working at Otomagnetics, Ms. Batra decided that they would be paid twice per month consistent with the law, with their paydays being the 15th day of the month and the last day of the month. (Amended Complaint, ¶14). However, if an official pay day fell on a weekend day, then Defendant Batra paid Plaintiff on the last day of the week. (*Id.*). This pattern of pay days continued until on or about December 31, 2024, when Defendant Batra ceased paying Plaintiffs on a regular basis or ceased paying them at all. (*Id.*).

Plaintiff Azie was not paid any wages for his work from on or about February 1, 2025 to June 23, 2025. (Amended Complaint, ¶¶ 1, 20).

For Plaintiff Tahriri, he was not paid any wages for his work from on or about February 1, 2025 to June 23, 2025. (Amended Complaint, ¶¶ 2, 21).

For Plaintiff Wong, she was not paid any wages for her work from on or about February 1, 2025 to February 28, 2025. (Amended Complaint, ¶¶ 3, 22).

For the entire month of January 2025, none of the Plaintiffs were timely paid wages due on either of the two pay days. (Amended Complaint, ¶¶ 1-3, 20-22). For the entire month of

February 2025, none of the Plaintiffs were paid any wages due for their work. (Amended Complaint, ¶15).

None of the Plaintiffs received written notice that their rates of pay or salary were changed. (Amended Complaint, ¶¶ 17-19).

3. *Leave*

The employee handbook in effect provided that on the dates that each Plaintiff ceased working for the Company, each of them was to be paid for any accrued and unused paid time off ("PTO"). (Amended Complaint, ¶¶25-30). However, on the dates that they separated from the Company, none of the Plaintiffs were properly paid for the PTO that they actually accrued but did not use. Instead, Defendant Batra, "without any written or other notice. . . [unilaterally] removed all but: (a) 80 hours of [Plaintiff Azie's] PTO balance, which had accrued from the beginning of his employment to June 23, 2025; (b) 80 hours of [Plaintiff Tahiri's] PTO balance, which had accrued from the beginning of his employment to June 23, 2025; and (c) 80 hours of [Plaintiff Wong's] PTO balance, which had accrued from the beginning of her employment to December 31, 2024." (Amended Complaint, ¶¶25, 27, 29).

**B. Procedural Background**

On July 17, 2025, Plaintiffs filed an Amended Complaint against Defendant Batra and Otomagnetics seeking payment of unpaid wages. In particular: Count I alleges violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-216(b), specifically, non-payment of wages, including non-payment of at least the minimum wage and non-payment PTO; Count II alleges violations of the Maryland Wage and Hour Law ("MWHL"), Md. Code. Ann., Labor & Empl. § 3-427, specifically, non-payment of wages, including non-payment of at least the minimum wage and non-payment PTO; and Count III alleges violations of the Maryland Wage Payment and Collection

Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-502, 3-505, 507.2, specifically, non-payment of wages, including non-payment of at least the minimum wage and non-payment PTO. (Amended Complaint, ¶¶ 32-62).

On August 14, 2025, Plaintiffs filed a motion for alternative service, asking the court to permit them to serve Defendant Batra with a copy of the First Amended Complaint and other documents via posting at—and mailing to-these documents to 1851 Sorrell Circle, Rocklin, CA 95765, and via mail to her attention at the office of Otomagnetics, 2 Bryant Street, Suite 240, San Francisco, CA 94105. (ECF No. 12). On August 18, 2025, the Court granted Plaintiffs' motion. (ECF No. 15). On September 5, 2025, a summons was returned as executed, which reflected that on August 29, 2025 a private process server properly served the First Amended Complaint and other documents upon Defendant Batra at these addresses. (ECF No. 18). Thus, the deadline for Defendant Batra to file a responsive pleading within the 21-day period provided by Federal Rules of Civil Procedure 4 and 12(a)(1)(A)(i) was September 19, 2025.

On September 22, 2025, Plaintiffs dismissed Otomagnetics from this action because it forfeited its corporate charter. (ECF Nos. 20-21).

On September 22, 2025, Plaintiffs filed a "Motion for Clerk's Entry of Default" against Defendant Batra, pursuant to Fed. R. Civ. P. 55(a). (ECF No. 19). The record reflects that this motion was served on Defendant Batra via first class mail at the two above-listed addresses, and at Otomagnetics, Inc., 19 First Field Road, Suite 200, Gaithersburg, MD 20878. (*Id.*). On September 23, 2025, the Clerk of the Court granted the motion by entering an order of default and issuing a notice of default as to Defendant Batra. (ECF Nos. 22-23). The Clerk of the Court mailed the order and notice via certified mail to Defendant Batra the Sorrell Circle address. (ECF No. 24). However, on October 2, 2025, the mail was returned to the Clerk of the Court as "unclaimed."

(*Id.*).

On December 2, 2025, Plaintiffs filed their motion for default judgment and attachments thereto, serving it on Defendant Batra. (ECF No. 25). In the Motion,[2] Plaintiffs move for default judgment against Defendant Batra in the amount of $460,977. (Motion, pp. 2-3). Attached in support of the Motion are: (1) the "Declaration of Obiora Azie" (ECF No. 25-3, Exhibit A, "Azie Decl."); (2) the "Declaration of Mohammadreza Tahriri" (ECF No. 25-4, Exhibit B, "Tahriri Decl."); (3) the "Declaration of Lok Sum Wong" (ECF No. 25-5, Exhibit C "Wong Decl."); (4) spreadsheets reflecting damages calculations for Plaintiff Azie (ECF Nos. 25-6, 25-9, Exhibits D, G; "Azie Spreadsheet 1" and "Azie Spreadsheet 2"); (5) spreadsheets reflecting damages calculations for Plaintiff Tahriri (ECF Nos. 25-7, 25-10, Exhibits E, H; "Tahriri Spreadsheet 1" and "Tahriri Spreadsheet 2"); (6) spreadsheets reflecting damages calculations for Plaintiff Wong (ECF Nos. 25-8, 25-11, Exhibits F, I; "Wong Spreadsheet 1" and "Wong Spreadsheet 2"); and (7) a "Declaration of Molly Armstrong." (ECF No. 25-12). Ms. Armstrong prepared the aforementioned spreadsheets relying upon: (a) pay stubs; (b) "employee portal screenshots;" and (c) Plaintiffs' statements and declarations, text messages, emails, offer letters, and information about hours of accrued but unpaid PTO. (*Id.*).

To date, Defendant Batra has never filed an Answer to the First Amended Complaint, the motion for clerk's entry of default, the order and notices of default, or the motion for default judgment.

## II. DISCUSSION

### A. Default Judgment

Rule 55 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") governs default

[2] The substantive arguments are contained in the memorandum, which is found at ECF No. 25-2. For ease, those page numbers are cited to when I refer to "the Motion."

judgments. Upon motion of a party, Fed. R. Civ. P. 55(a) provides that a default judgment can be entered when a defendant fails to "plead or otherwise defend in accordance with [Rule 55]." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982). In addition, when evaluating a motion for default judgment, if a party's factual allegations are unchallenged because of a defendant's unresponsiveness, a district court has the discretion to grant default judgment. *See* Fed. R. Civ. P. 55(a)–(b).

In this case, more than eleven months have passed since Defendant Batra was served with a copy of the First Amended Complaint, and more than ten months have passed since she was served with a copy of Plaintiffs' motion for Clerk's entry of default. Next, there is no evidence before the court that Plaintiff did not receive service of the motion for entry of default at any of the three addresses. In addition, more than nine months have passed since Defendant Batra was sent the order entering default and the notice via certified, which she refused to claim. Furthermore, more than 8 months have passed since Defendant Batra was served with a copy of the motion for default judgment and the exhibits appended thereto. To date, Defendant Batra has failed to defend against this case. Therefore, I find that Defendant Batra has been available to respond or defend against this case, yet has failed to do so. Because Defendant Batra has been unresponsive, I recommend that the district court enter default judgment against her. *Disney Enters., Inc. v. Delane*, 446 F. Supp. 2d 402, 405-06 (D. Md. 2006) (holding that entry of default judgment was proper because defendant had been properly served with an Amended Complaint and did not respond, even after plaintiffs tried repeatedly to contact him); *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005) (concluding that default judgment is appropriate when defendant is "unresponsive for more than a year" after denial of motion to dismiss, even though defendant was properly served with plaintiff's motions for entry of default and default judgment); *Park Corp v.*

*Lexington Ins. Co*., 82 F.2d 894, 896 (4th Cir. 1987) (affirming default judgment when defendant lost summons and did not respond within the proper time period).

That being said, because the Company has been dismissed from the action, the undersigned must first analyze whether Plaintiffs may recover damages from Defendant Batra under the FLSA. As set forth herein, that required an analysis of whether each Plaintiff was engaged in interstate commerce.

In addition, the undersigned finds it prudent to analyze whether Plaintiffs have established that Defendant Batra was their employer, and ultimately met their evidentiary burden to establish that Defendant Batra is liable and ultimately responsible for the damages that they seek under the FLSA, MWHL, and MWPCL.

**B. Plaintiffs Engaged in Interstate Commerce**

A plaintiff pursuing a FLSA claim against a corporate defendant must establish that the defendant is an "enterprise" engaged in commerce with a gross volume of sales not less than $500,000, and has employees that are engaged in commerce. *See* 29 U.S.C. § 203(s)(1). Here, because Plaintiffs have dismissed Otomagnetics from the action, Plaintiff must have an alternative theory that entitles them to recover damages under the FLSA.

The FLSA requires an employer to pay a covered employee the minimum wage. 29 U.S.C. § 206(a)(1). The statute also requires an employer to pay an employee "who in any workweek is engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). Employees who engaged in commerce "or in the production of goods for commerce" are known as covered employees who have "individual coverage." *Ergashov v. Glob. Dynamic Transportation*, *LLC*, 680 F. App'x 161, 162 (4th Cir. 2017).

In addition, the 4th Circuit has held that "with respect to individual coverage, an

employee "engaged in commerce" is one who is 'in the channels of interstate commerce,' as opposed to merely affecting commerce. *Ergashov*, 680 F. App'x at 162 (quoting *McLeod v. Threlkeld*, 319 U.S. 491, 494 (1943)). Moreover, "'the test is whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity.'" *Ergashov*, 680 F. App'x at 162 (quoting *Mitchell v. C.W. Vollmer & Co.*, 349 U.S. 427, 429 (1955)).

Furthermore, pursuant to 29 U.S.C. § 203(b), "commerce" is defined as "transportation, transmission, or communication among the several states." This includes "'the movement of persons or things (whether tangibles or intangibles, and including information and intelligence)" among states or internationally." *Shelton v. Inn at Trivium,* Civ. No. 08CV00040, 2009 WL 1255465, at *2 (W.D. Va. May 6, 2009)(citing 29 C.F.R. § 776.9)). Based on this framework, a district court within the 4th Circuit has found that employees who communicated with out-of-state customers using the mail, telephone and fax machine were covered by the FLSA, because they were deemed to have "engaged in commerce." *Shelton*, 2009 WL 1255465, at * 2.

In this case, the Plaintiffs have completed declarations that describe in detail the activities in which they engaged involving out-of-state people, entities, and/or equipment. *See, e.g.,* Azie Decl., ¶¶ 10-17, 20-28; Tahriri Decl., ¶¶8-12, 16-18, 19-24, 28-29; Wong Decl., ¶¶ 10-14, 17-23, 27. On this record, I find that Plaintiffs engaged in commerce, as defined under the statute and the case law. Thus, if the amount of damages are proven, Plaintiffs are entitled to recovery of the same under the FLSA.

**C. Existence of Employer-Employee Relationship**

Before establishing liability under the FLSA, the MWHL and the MWPCL, Plaintiffs must first establish whether Defendant Batra was an "employer." The FLSA defines "employer" as "any

person acting directly or indirectly in the interest of an employer in relation to an employee." *See* 29 U.S.C. § 203(d). The MWHL and MWPCL have similar definitions for "employer." *See* Md. Code Ann., Lab. & Empl. § 3-401(b) (defining "employer" under the MWHL as "any person who acts directly or indirectly in the interest of another employer with an employee"); Md. Code. Ann., Lab. & Empl. § 3-501(b) (defining "employer" under the MWPCL as "any person who employs an individual in the State [of Maryland] or a successor of the person").

To determine whether an individual is properly deemed to be an employer under the FLSA, courts apply the "economic reality test," which requires consideration of several non-dispositive factors. In particular, the factors are whether the alleged employer: (1) had power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. *See De Paredes v. Zen Nails Studio, LLC*, TDC-20-2432, 2023 WL 2207405, *4 (D. Md. Feb. 24, 2023) (citing *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3rd 62, 83 (4th Cir. 2016)); *see also Gaske v. Crabcake Factory Seafood House, LLC*, Civ. No. 18-2530, 2021 WL 5326465, *2 (D. Md. Nov. 15, 2021)(holding that the "economic reality test is also used to determine whether an individual qualifies as an employer under the MWHL and MWPCL").

Construing the allegations in the well-pleaded Amended Complaint, as true, *see Ryan, supra,* at 780-81, I find that Defendant Batra was Plaintiffs' employer under the FLSA and MWPCL. Regarding the first factor, Defendant Batra had the authority to hire and fire Plaintiffs. (Amended Complaint, ¶¶ 1, 2, 3, 6, 7). Next, regarding the second factor, Defendant Batra supervised Plaintiffs, and created and enforced "Otomagnetics' policies and procedures governing employee pay and work hours." (Amended Complaint, ¶ 6). As it relates to the third factor, Defendant established and approved of Plaintiffs' rates and manner of payment, and she approved

of the decision not to pay Plaintiffs any compensation, as well as approved of the decision to pay them late, for the time periods alleged. Defendant Batra also determined the PTO to which Plaintiffs were entitled. (Amended Complaint, ¶ 6, 25-30). Finally, regarding the fourth factor, Defendant Batra maintained their employment records. (*Id.*).

In sum, I find that Defendant Batra was an employer within the meaning of the FLSA, the MWHL, and the MWPCL. Thus, I recommend that the district court so find.

**D. Liability Under Counts I, II, and III – FLSA, MWHL and MWPCL**

1. *Unpaid Minimum Wage and Salary and Change to Pay Day*

When seeking default judgment, Plaintiffs bear the burden of establishing that they were not paid the minimum wage. Both the FLSA and MWHL require that employers pay non-exempt employees a minimum wage for all hours worked. *See* 29 U.S.C. § 206(a); Md. Code Ann., Lab. & Empl. § 3-505(a). The MWPCL requires that Plaintiffs establish that they were not paid for certain periods of time, and/or they were paid late for other period of time. Md. Code Ann., Lab. & Empl. §§ 3-502(a), 3-505(a).

In the instant case, Plaintiffs submitted declarations and exhibits that set forth the total number of hours and the periods of time that they worked during their period of employment with Otomagnetics and Defendant Batra. Plaintiffs also detail how Defendant Batra failed to pay them any wages or salary for their work for February 1, 2025 to February 29, 2025. Plaintiffs Azie and Tahriri also establish that Defendant Batra did not pay them any wages for their work from March 1, 2025 until June 23, 2025. *See* Azie Decl., ¶ 34; Azie Spreadsheets 1-2; Tahriri Decl., ¶37; Tahriri Spreadsheets 1-2; Wong Decl., ¶ 36; Wong Spreadsheets 1-2. Based on the evidence before me, I find that Plaintiffs were not paid the minimum wage and were not paid the salaries that Defendant Batra promised to pay them. I further find that there is no bona fide dispute that

Plaintiffs worked the hours and the periods of time claimed, and that they should have been paid at least the minimum wage or the salaries for their work. I also find that Defendant Batra did not notify them that they were not entitled to their salaries. *See* Azie Decl., ¶¶ 9, 30, 32, 34, 40; Azie Spreadsheets 1-2; Tahriri Decl., ¶¶ 9, 33, 35, 37,43; Tahriri Spreadsheets 1-2; Wong Decl., ¶¶ 9, 33, 35, 37, 43. Wong Spreadsheets 1-2.

2. *PTO*

In Maryland, an employer must pay an employe all compensation that is due to her, including wages. Md. Code Ann., Lab. & Empl. §3-505. As is relevant here, the term "wage" includes a fringe benefit. Md. Code Ann., Lab. & Empl. §3-501(c)(2)(iii). PTO is a fringe benefit, i.e., an accrued or accumulated form of compensation. Thus, if an employer offers PTO to an employee, the employer must pay this wage. *See Whiting-Turner Contracting Co. v. Fitzpatrick*, 366 Md. 295, 783 A.2d 667, 672-73 (2001)("once a bonus, commission or fringe benefit has been promised as part of the compensation for service, the employee would be entitled to its enforcement as wages"); *see also Gresham v. Lumberman's Mut. Cas. Co.*, 426 F.Supp.2d 321, 323(D. Md. 2005)(MWPCL requires employer to pay employee "all wages due for work that the employee performed).

In addition, at the time that an employer hires an employee, the employer is required to give written notice of the employee's leave benefits. Md. Code Ann., Lab. & Empl. §3-504(a)(1)(iii). Moreover, if an employee properly earns PTO, an employer may not change or alter the employee's accrued PTO without first providing written notice to the employee; the notice is required at least one pay period in advance of the change. Md. Code Ann., Lab. & Empl. §3-504(a)(3). Thus, if an employer reduces an employee's accrued wages (including PTO) without notice, this also runs afoul of the law. Md. Code Ann., Lab. & Empl. §3-505(b).

In the instant case, Plaintiffs submitted declarations and exhibits that set forth the terms

and conditions of the PTO, including the effective date of this wage and how PTO would accrue. The evidence before me reflects that "before December 31, 2024," Plaintiffs accrued PTO "without any cap on the amount that could be carried over from year to year. *See* Azie Decl., ¶35; Tahriri Decl., ¶38; Wong Decl., ¶ 39. The evidence before me also establishes that Defendant Batra, without written notice, reduced all Plaintiffs' PTO balances from their prior total to just 80 hours. In particular, for Plaintiff Azie, 186.94 hours were improperly deducted; for Plaintiff Tahriri, 242.94 hours were improperly deducted; for Plaintiff Wong, 170.60 hours were improperly deducted, yet none of these deductions were made to account for errors. *See* Azie Decl., ¶¶ 31-33, 35-38; Tahriri Decl., ¶¶ 33, 35-36, 39-41; Wong Decl., ¶¶ 33-36, 41-43.

In sum, I find that Plaintiffs have established Defendant Batra's liability for violating the FLSA, MWHL and MWPCL by not paying their salaries or the amount of monies due associated with their PTO, as pleaded in Counts I-III. Accordingly, I find that Plaintiffs are entitled to damages, as set forth below in Section III.

## III. DAMAGES

Although liability has been established, any allegation concerning the amount of damages is not deemed admitted just because a defendant fails to deny in a required responsive pleading. Fed. R. Civ. P. 8(b)(6). Thus, in a default judgment scenario, "'[c]laims for damages must generally be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed.'" *Trustees of the Nat'l Asbestos Workers Pension Fund v. Ideal Insulation, Inc.*, Civ. No. ELH-11-832, 2011 WL 5151067, at *4 (D. Md. Oct. 27, 2011).

However, if the record supports the damages requested, then a court may award damages without a hearing. *See Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, Civ. No. NKM-09-0004, 2009 WL 1872535, at *2 (W.D. Va. June 30, 2009) (concluding that no evidentiary

hearing on damages is needed based on moving party's affidavit and printout submissions establishing amount of damages sought); *DirecTV, Inc. v. Yancey*, Civ. No. MFU-404-11, 2005 WL 3435030, at *2 (W.D. Va. Dec. 12, 2005) (concluding that where sufficient evidence exist to support damages, "[a] hearing in open court is not required").

Finally, the type and amount of damages that may be entered as a result of a party's default are limited to the amount that is demanded in a party's pleadings. Fed. R. Civ. P. 54(c).

**A. Actual Damages**

As previously held, I recommend that the district court find that Defendant Batra is liable for the conduct described in Counts I-III, as she failed to pay Plaintiffs their salaries and for PTO. Plaintiffs' uncontroverted evidence is that their damages are as follows: (1) unpaid wages, for the periods of times identified; (2) PTO that was improperly deducted from their accrued PTO, in the amounts and for the dates identified; and (3) PTO that Plaintiffs accrued that remained unpaid at the time that Plaintiffs ceased working for Otomagnetics. *See* Azie Decl., ¶¶ 30, 31, 33-38, 47; Azie Spreadsheets 1-2; Tahriri Decl., ¶¶ 33, 36-37, 39-41, 53; Tahriri Spreadsheets 1-2; Wong Decl., ¶¶ 33-34, 36, 41-43, 50; Wong Spreadsheets 1-2.

Accordingly, the undersigned recommends that the district court award the Plaintiff damages for unpaid salary and PTO wages, during the relevant time periods, as reflected below:

| Name of Plaintiff | Unpaid Salary | Unpaid PTO |
|---|---|---|
| Obiora Azie | $42,559.62 | $17, 068.21 |
| Mohammadreza Tahriri | $46,747.38 | $21,384.67 |
| Lok Sum Wong | $10,000 | $15,899.36 |

*See Pentech*, 2009 WL 1872535, at *2; *DirecTV, Inc.*, 2005 WL 3435030, at *2.

In sum, the undersigned recommends that the district court award the Plaintiff actual

damages in the amounts reflected above.

**B. Enhanced Damages**

Plaintiffs seeks liquidated damages under the MWPCL. The MWPCL states that "if […] a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage […]." *See* Md. Code. Ann., Lab. & Empl. § 3-507.2(a)-(b). In addition, a court possesses the discretion to determine whether to award liquidated damages and in what amount. *Peters v. Early Healthcare Giver, Inc.*, 439 Md. 646, 97 A.3d 621, 629 (2014).

As a preliminary matter, through her failure to respond to or otherwise defend against this action, Defendant Batra have not shown that the non-payment of unpaid wages and PTO was in good faith, nor has she shown that they had reasonable grounds to believe that they were not violating the FLSA. Relatedly, there is no evidence before me that Defendant Batra had a *bona fide* dispute about the salary and PTO wages owed. Next, the uncontroverted evidence before me is that Defendant Batra chose to withhold wages promised and reduce PTO hours accrued without explaining to Plaintiffs why she chose to so act. *See* Azie Decl., ¶¶ 40-41; Tahriri Decl., ¶¶ 43-44; Wong Decl., ¶¶ 39-40. In addition, Plaintiffs have established the financial harm that they suffered due to Defendant Batra's actions. *See* Azie Decl., ¶¶ 42, 46; Tahriri Decl., ¶¶ 45-46; Wong Decl., ¶¶ 47-48, 55. Accordingly, I recommend that the district court award liquidated damages.

The question, then, is about the multiplier to be applied. In this district, courts have held that the award of treble damages is appropriate "for public policy and remedial reasons, to protect workers, and to incentivize employers to pay their employees regularly." *Melendez v. Spilled Milk Catering, LLC,* Civ. No. PWG 18-2135, 2019 WL 2921782, at *4 (D. Md. July 8, 2019)(further citation omitted); *see also Imgarten v. Bellboy Corp.*, 383 F. Supp. 2d 825, 848 (D. Md. 2005);

*Cruz v. Home & Garden Concepts, LLC*, Civ. No. GJH-15-204, 2016 WL 3679139, at *7 (D. Md. July 12, 2016).

Other courts have awarded double damages if a plaintiff does not offer evidence of consequential damages in addition to their unpaid wages. *Sanabria v. Cocody, Inc.*, Civ. No. DKC-16-0365, 2017 WL 3022990, at *4 (D. Md. July 17, 2017) ("[I]t has become customary in this district to award double damages under the FLSA, but not treble damages under the MWPCL, when the "defendants '[do] not offer any evidence of a bona fide dispute' to make liquidated damages inappropriate, [but the] plaintiffs '[do] not offer any evidence of consequential damages suffered because of the underpayments.' ") (quoting, *e.g.*, *Clancy v. Skyline Grill, LLC*, No. ELH-12-1598, 2012 WL 5409733, at *8 (D. Md. Nov. 5, 2012)) (report and recommendation). Put another way, courts have awarded treble damages under the MWPCL if a plaintiff provides evidence of consequential damages suffered because of underpayments or failure to pay wages. *See, e.g., Portillo, supra*, 2024 WL 1256265, at *12; *Ramirez v. 316 Charles,* LLC, Civ. No. SAG-19-3252, 2020 WL 7398807, at *9 (D. Md. Dec. 17, 2020)(quoting *Sanabria v. Cocody, Inc.,* Civ. No. DKC-16-365, 2017 WL 3022990, at *4 (D. Md. July 17, 2017)); *see also Clancy v. Skyline Grill, LLC*, Civ. No. ELH-12-1598, 2012 WL 5409733, at *8 (D. Md. Nov. 5, 2012); *see also Villatoro v. CTS & Assocs., Inc.*, Civ. No. DKC-14-1978, 2016 WL 2348003, at *3 (D. Md. May 4, 2016).

Here, Plaintiffs have proven consequential damages. *See* Azie Decl., ¶¶ 42, 46; Tahriri Decl., ¶¶ 45-46; Wong Decl., ¶¶ 47-48, 55. Therefore, I recommend that the district court grant Plaintiffs' request for double liquidated damages. Thus, I recommend that the district court award each Plaintiff three times the amount of unpaid wages as set forth below:

| Name of Plaintiff | Unpaid "Salary Wages" | Unpaid PTO | Liquidated Damages- MWPCL |
|---|---|---|---|
| Obiora Azie | $42,559.62 | $17,068.21 | $119,255.66 |
| Mohammadreza Tahriri | $46,747.38 | $21,384.67 | $136,264.10 |
| Lok Sum Wong | $10,000 | $15,899.36 | $51,798.92 |

### C. Attorneys' Fees and Costs.

Plaintiffs seek leave to file a motion for attorneys' fees and other associated costs. (Motion, p. 22).

Both the FLSA and the MWPCL allow for a prevailing plaintiff to be awarded reasonable attorney's fees and costs if wages were not legitimately withheld by an employer as a result of a bona fide dispute. *See* 29 U.S.C. § 216(b); Md. Code Ann., Lab. & Empl. § 3-507.2(b). Because Defendant Batra has put forth no evidence that a bona fide dispute existed, Plaintiffs may be awarded reasonable attorney's fees and costs associated with enforcing judgment.

Accordingly, I recommend that the district court allow Plaintiffs to file a separate motion that establishes the reasonable attorneys' fees and costs owed, within 30 days from the date that the district court enters judgment in Plaintiffs' favor, provided that said motion is filed pursuant to Fed. R. Civ. P. 54(d)(2)(B) and in conformity with the Court's Local Rules (D. Md. 2025).

## IV. CONCLUSION

In sum, I respectfully recommend that the district court:

1) **GRANT** Plaintiffs' motion for default judgment, (ECF No. 25);

2) **ORDER** that default judgment be entered in favor of the Plaintiffs and against Defendant Batra, as follows:

| Name of Plaintiff | Unpaid "Salary Wages" | Unpaid PTO | Liquidated Damages-MWPCL | Total |
|---|---|---|---|---|
| Obiora Azie | $42,559.62 | $17,068.21 | $119,255.66 | $178,883.50 |
| Mohammadreza Tahriri | $46,747.38 | $21,384.67 | $136,264.10 | $204,396.15 |
| Lok Sum Wong | $10,000 | $15,899.36 | $51,798.92 | $77,698.08 |

3) **ORDER** that Plaintiffs' counsel provide, within thirty (30) days of the date that the district court enters judgment in Plaintiffs' favor, a motion for attorneys' fees and other associated costs.

Date: August 10, 2026

/s/
The Honorable Gina L. Simms
United States Magistrate Judge